IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE QUEEN,

    Plaintiff,

v.                                                                   Civil No. 24-3474-BAH

OLIVETREE MANAGEMENT LLC,

    Defendant.

**MEMORANDUM OPINION**

Plaintiff Nicole Queen ("Queen") brought this putative class action against OliveTree Management LLC ("OliveTree") in the Circuit Court for Baltimore County, Maryland, alleging several causes of action stemming from OliveTree's alleged collection of rent and late fees during Queen's tenancy in an apartment rented and managed by OliveTree. *See* ECF 2.[1] OliveTree filed a notice of removal, ECF 1, asserting federal subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

Pending before the Court is OliveTree's motion to dismiss, *see* ECF 10, which Queen opposes, *see* ECF 11. OliveTree filed a reply to Queen's opposition. *See* ECF 14. All filings include memoranda of law, and Queen's opposition also includes an exhibit. *See* ECF 11-1 (rental agreement). The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, OliveTree's motion will be GRANTED, albeit not for the precise reasons stated in the motion. However, the dismissal

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page. Unless otherwise indicated, all ECF numbers refer to the instant case.

is without prejudice and Queen will be provided an opportunity to file a motion for leave to amend her complaint.

I.      **BACKGROUND**

Queen alleges that she rented an apartment from OliveTree "with a lease that commenced on December 21, 2023," for which OliveTree served as property manager. ECF 2, at 9 ¶¶ 53, 54. Queen paid rent directly to OliveTree. *Id.* ¶ 55. Queen further alleges that in OliveTree's role as "property management company for numerous apartment complexes in Maryland," *id.*, at 2 ¶ 1, it collects rent and late fees on behalf of property owners, *id.* ¶ 2. Queen alleges that OliveTree requires tenants to pay a late fee before rent is 15 days late, which is "directly contrary to Md. Com. Law Art. §14-1315 of the Maryland Consumer Protection Act." *Id.* at 7 ¶ 40. Queen also alleges that "OliveTree routinely calculates its late fees or late charges based on the rent amount and other amounts that it claims to be rent." *Id.* at ¶ 41. Finally, Queen asserts that "OliveTree has never obtained a license to collect debts, but has collected debts in Maryland for many years, directly or indirectly." *Id.* at ¶ 43. Queen alleges that this practice violated "Md. Code Ann., Bus. Reg. § 7-401" since "OliveTree is knowingly and willfully doing business as a collection agency without a collection license." *Id.* at 7–8 ¶¶ 44, 45.

Queen summarizes the harm suffered by her and the putative class as follows:

> Plaintiff and the Class were harmed when OliveTree, while operating as a debt collection agency, directly or indirectly, without the required license, threatened lawsuits, obtained judgments against them or collected alleged debts, interest, and costs (including attorney fees) or otherwise collected from them. The damage arose from the collecting, obtaining or enforcing of improperly obtained judgments and otherwise collecting, directly or indirectly, from the Plaintiff and others including improper late fees.

*Id.* at 8–9 ¶ 52. Queen pleads five claims for relief: (1) declaratory judgment, injunction and ancillary relief regarding unenforceable judgments obtained by an unlicensed collection agency (Count I), *id.* at 14–16; (2) unjust enrichment (Count II), *id.* at 16–18; (3) violation of the Maryland

Consumer Debt Collection Practices Act, Md. Code Ann., Com. Law § 14-201 et seq. ("MCDCA") and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 14-202(8) ("MCPA") (Count III), *id.* at 18–21; (4) declaratory judgment, injunctive and ancillary relief regarding illegal lease provisions (Count IV), *id.* at 21–23; and (5) a claim for attorney's fees (Count V), *id.* at 23. For the reasons noted below, all claims fail for lack of standing.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted," and OliveTree rests its dismissal motion on this rule. However, the Court has an independent duty to determine whether it has jurisdiction over the case. *Wells v. Johnson*, --- F.4th ---, No. 24-cv-1829, 2025 WL 2315981, at *2 (4th Cir. Aug. 12, 2025) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

## III. ANALYSIS

### A. As Pled, Queen Lacks Standing to Bring Her Claims.[2]

The shortcomings in Queen's allegations were recently chronicled in a nearly identical case before Judge Chasanow. *See Jones v. Glendale Apt. Prop. LLC*, Civ. No. DKC-24-3731, 2025 WL 2659875 (D. Md. Sept. 17, 2025).[3] In *Jones*, the plaintiff (Jones) raised a putative class action pursuant to the MCDCA and MCPA against another apartment management company alleging that the company "collected rent without a collection agency license." *Id.* at *1. Jones also alleged that the management company "charges and collects late fees in violation of the MCPA." *Id.* The defendant in *Jones* moved to dismiss the complaint pursuant to Rule 12(b)(6). *Id.* at *2. However, before reaching the merits of that motion, Judge Chasanow determined that Jones failed to set forth facts sufficient to allege the injury and causation requirements of standing. *Id.* at *3–6. The Court adopts Judge Chasanow's reasoning in full as it is on all fours with the case at bar and thus will dismiss Queen's complaint on the same grounds. Specifically, as was the case in *Jones*, Queen's complaint fails to allege all three elements of standing: injury in fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61.

---

[2] In assessing standing at the motion to dismiss stage, the court "accept[s] all allegations in the complaint as true and construe[s] those allegations 'in the light most favorable to the plaintiff.'" *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017)).

[3] The *Jones* matter presented a similar claim raised by a different plaintiff against a different property management company. *See* ECF 1 in Civ. No. DKC-24-3731 (the "Jones Complaint"). The *Jones* plaintiff, however, has the same counsel as Queen. The complaint in *Jones* was also removed to federal court. *See* ECF 1 in Civ. No. DKC-24-3731 (originally filed in the Circuit Court for Prince George's County, Maryland). The basis for removal in each case differs. *Compare* ECF 1, at 3–5 (removal pursuant to the Class Action Fairness Act), *with* ECF 1 in Civ. No. DKC-24-3731, at 3 (removal pursuant to diversity jurisdiction). Neither Queen nor the plaintiff in *Jones* filed a motion to remand.

As to injury in fact, Queen essentially alleges a mere "statutory violation," which does not amount to "concrete harm" required to establish an injury in fact. *Jones*, 2025 WL 2659875 at *3 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)). Queen alleges that the collection of debts without a license constitutes an injury. However, Queen, like Jones, "still owed a rental debt to [her] landlord" and thus the only consequence of the landlord's failure to secure a license would be that "the landlord could not use Maryland courts to collect that debt." *Id.* (quoting *Zambali v. Shulman Rogers, P.A.*, Civ. No. 23-cv-03194-SAG, 2024 WL 3161590, at *6 (D. Md. June 25, 2024)). Further, Queen, again like Jones, "does not allege a particular instance in which [s]he refused to pay Defendant and Defendant then attempted to force the payment through the Maryland court system." *Id.* at *4. To be sure, Queen vaguely alleges such practices in asserting that OliveTree "threatened lawsuits, obtained judgments against them or collected alleged debts, interest, and costs (including attorney fees) or otherwise collected from them," ECF 2, at 8–9 ¶ 52, but these allegations—like the identical claims in *Jones*—"are too conclusory to allow the court to assess the existence and nature of those judgments." 2025 WL 2659875, at *4. Further, Queen does not allege that OliveTree "will imminently enforce the allegedly illegal lease provisions against [her]" and thus raises only the mere possibility of "future injury." *Id.* Absent, at minimum, a concrete and specific allegation that OliveTree had previously enforced the allegedly unlawful provision, Queen cannot establish an injury on the ground that the provision might be imposed in the future. *Id.* (citing *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018)). As such, Queen fails to concretely allege an injury in fact.

As to causation, "there are not enough facts on the face of the complaint to establish causation due to [OliveTree's] activity as an allegedly unlicensed collection agency." *Id.* Queen fails to specify any instance where OliveTree filed a lawsuit against her or any putative class

member. *Id.* The same is true of the allegations that OliveTree enforced illegal lease provisions since Queen only vaguely asserts "paying fees wrongfully charged." ECF 2, at 9 ¶ 58. Even assuming this reference is to late fees purportedly assessed before fifteen days after rent is due, "fail[ing] to explain how and when Defendant charged [her] late fees dooms any causal link [s]he hopes to establish." *Jones*, 2025 WL 2659875, at *5.

Finally, Queen also fails to satisfy the requirement of redressability as to some claims for the reasons identified by Judge Chasanow in *Jones*. *Id.* at *5–6.

The Court acknowledges that there a few minor differences between the complaint here and the one in *Jones*. However, these differences, discussed below, do not alter the applicability of the analysis employed in *Jones* and thus do not change the outcome here. First, Queen seeks to represent both a class and a subclass, *see* ECF 2, at 10 ¶¶ 60, 64, at 11–12 ¶ 66, at 13 ¶ 72, at 15 ¶¶ 80–81, at 17, ¶¶ 91–92, at 22 ¶ 113, while the plaintiff in *Jones* only sought to represent one class, *see generally* ECF 3 in Civ. No. DKC-24-3731. Of course, "the suit's class action nature 'adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong and which they purport to represent.'" *Jones*, 2025 WL 2659875, at *2–3 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation modified in *Jones*)). Here, the claims Queen makes on behalf of both the putative class and the subclass are essentially the same and both rest on alleged violations of the same Maryland statutes. The same was true of the complaint in *Jones* with respect to the allegations made on behalf of the putative class. *See* ECF 3 in Civ. No. DKC-24-3731, at 4 ¶¶ 20, 23, at 19 ¶ 114. The addition of a putative subclass does not alter the applicability of the analysis in *Jones*.

Second, Queen alleges that "OliveTree's collection of debt, including through lawsuits, from Plaintiff and others was done illegally," ECF 2, at 8 ¶ 49, a specific claim that was missing from the accusations related to the defendant in *Jones*. However, this lone additional sentence is conclusory and serves only to reaffirm other similarly vague allegations that are found in the operative complaints in both this case and in *Jones*. *See, e.g., id.* at 18 ¶ 94; *see also, e.g.*, ECF 3 in Civ. No. DKC-24-3731, at 16 ¶ 95 (alleging that the *Jones* defendant's "collection efforts included, directly or indirectly, collecting from and filing lawsuits against the Plaintiff and Class members . . .").[4] Again, this minor difference does not change the applicability of the analysis employed in *Jones*.[5]

Given the similarity between the two complaints, the Court adopts Judge Chasanow's reasoning in *Jones* and finds that Queen "has not established at least two of the three elements of Article III standing on any of [her] claims for relief [and thus] the court lacks jurisdiction to hear all of them." 2025 WL 2659875, at *7.

### B. The Court Will Afford Queen an Opportunity to Move for Leave to Amend.

In Queen's opposition, she requests the opportunity to amend her complaint, at least as it relates to the allegations related to unjust enrichment. ECF 11, at 9–10 ("If the Court finds that instead of pleading unjust enrichment, Queen should have pled a claim for 'money had and

---

[4] To the extent certain clauses in the two complaints are worded slightly differently, they ultimately assert the same allegations. *Compare, e.g.*, ECF 2, at 2 ¶ 7 ("[OliveTree] is actively managing multiple properties and knows that it needs a license or recklessly disregarded that it needs a license."), *with* ECF 3 in Civ. No. DKC-24-3731, at 15 ¶ 89 ("Glendale knew or acted with reckless disregard that it was required to have a license to act as a collection agency in the State of Maryland . . . ."). These differences are stylistic and do not create any substantive differences in the allegations of the complaint, and thus do not provide any meaningful daylight between the two complaints.

[5] Queen also included a count seeking attorney's fees. *See* ECF 2, at 23 ¶ 116. "Given that the court dismisses [her] first four counts, Count Five is necessarily dismissed, too." *Jones*, 2025 WL 2659875, at *7 n.8.

received' or that the complaint should not state disgorgement but instead restitution, the remedy is leave to amend the complaint not dismissal."). The Court assumes the request would apply to all the complaint's infirmities. Ordinarily, leave to amend under the circumstances present here must be formally requested by motion. *See Jones*, 2025 WL 2659875, at *7 ("[A] plaintiff's request for 'leave to amend [made] only in a footnote of their response to Defendants' motion to dismiss' does not constitute a proper motion to amend." (quoting *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008))). Defendant did not address Plaintiff's request for leave to amend in its reply. Regardless, "[u]ntil Plaintiff has supplied, or attempted to supply, concrete facts, the court cannot determine whether amendment necessarily would be futile." *Id.* As such, the complaint is dismissed without prejudice and Queen will be given the opportunity to file a motion for leave to amend her complaint within twenty-one days.

## IV. CONCLUSION

For the foregoing reasons, OliveTree's motion to dismiss will be GRANTED. Queen's complaint will be dismissed without prejudice, and she will be provided twenty-one days to file a motion for leave to amend her complaint.

A separate implementing Order will issue.

Dated: September 22, 2025                                     /s/
                                                         Brendan A. Hurson
                                                         United States District Judge