**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NICOLE QUEEN, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 24-3474-BAH |
| OLIVETREE MANAGEMENT LLC, | * | |
| Defendant. | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

On September 22, 2025, the Court dismissed Plaintiff Nicole Queen's ("Queen's") complaint against Defendant OliveTree Management LLC ("OliveTree") for lack of Article III standing. ECF 15. Pending before the Court is Queen's motion for leave to file an amended complaint. ECF 19. OliveTree filed an opposition, which also includes a motion to dismiss, ECF 20, and Queen filed a reply, ECF 21. The parties have also filed supplements, ECF 22 (Queen's); ECF 23 (OliveTree's), and Queen has filed an opposition to OliveTree's supplement, ECF 24. The Court has reviewed all relevant filings and finds that no hearing is necessary.[1] *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Queen's motion for leave to amend the complaint is **GRANTED**, and OliveTree's opposition, construed as a motion to dismiss the amended complaint, is **GRANTED in part and DENIED in part.**

## I. BACKGROUND

Queen's original complaint was filed in the Circuit Court for Baltimore City, and OliveTree removed the case to federal court. ECF 1 (notice of removal); ECF 2 (state court complaint). The

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

complaint was dismissed for lack of Article III standing and, upon request, Queen was granted an opportunity to file a motion for leave to file an amended complaint. ECF 15, at 4–8. On October 28, 2025, Queen filed her motion to amend with a proposed amended complaint attached. ECF 19.

The proposed amended complaint is a putative class action. ECF 19-2, at 1. Queen alleges that OliveTree is a property management company for various apartment buildings in Maryland. ECF 19-2, at 2 ¶ 4. In December of 2023, Queen signed a lease for an apartment at Foundry by the Park in Dundalk, Maryland, an apartment complex managed by OliveTree. *Id.* at 10 ¶ 66–67. Her rent was $1,075 per month and her lease also required a $45 pet fee, if applicable, and a utility fee of $45 to $55 depending on the number of bedrooms in the apartment being rented. *Id.* ¶ 67. The late fee provision in Queen's lease "states that a late fee charge shall be 5% of the base rent," *id.* at 3 ¶ 10, and "permits a late fee if the consumer is less than 15 days late," *id.* at 13 ¶ 84.

Queen alleges that on May 24, 2024, OliveTree brought a failure to pay rent action against her and "claimed that [she] owed rent of $1120" along with a "late fee[] of $56." *Id.* at 11 ¶¶ 69–70. According to Queen, based on her base rent of $1,075, the late fee owed should have been "$53.75 not the $56 set forth in the [failure to pay rent] complaint." *Id.* ¶ 72. Nevertheless, Queen alleges that OliveTree "collected the late fee included in its [failure to pay rent suit] from" her. *Id.* ¶ 73. Later in Queen's tenancy, OliveTree filed at least nine subsequent suits against Queen for failure to pay rent "and in each suit, it sought a late fee more than 5% of the rent due."[2] *Id.* at 11–13 ¶¶ 74–83. At least four of these cases were "filed in the name of OliveTree Management TA Foundry by the Park Townhomes." *Id.* at 13 ¶ 85. Finally, Queen alleges that OliveTree is not

[2] The Court observes that, unlike in the May 24, 2024 failure to pay rent action, Queen does not allege that OliveTree actually *collected* these inflated late fees in connection with the subsequent failure to pay rent lawsuits, only that it *sought* them. ECF 19-3, at 11–12 ¶ 75–82.

licensed as a collection agency but is required to be because it "collected rent and late fees for another," namely, Foundry by the Park and other apartment complexes it manages. *Id.* ¶ 90.

Queen seeks to amend her complaint to include five claims: violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law ("CL") § 14-201 et seq., and the Maryland Consumer Protection Act ("MCPA"), CL § 13-101 et seq., (counts I and III); violation of § 8-208 of the Real Property ("RP") Article of the Maryland Code (counts II and V), and a claim for money had and received and unjust enrichment (count IV). ECF 19-2, at 18–26. If Queen is granted leave to amend, OliveTree seeks to dismiss all claims. *See* ECF 20, at 1 ("Should the Court grant the Motion for Leave, Defendant requests that the Motion to Dismiss be considered filed as of this date.").

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 15(a)

Rule 15 of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). The Fourth Circuit has explicitly directed trial courts "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber*, 438 F.3d at 428.

### B. Federal Rule of Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal

conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

### A. Amendment

As noted, the original complaint was dismissed for lack of Article III standing, ECF 15, and Queen contends that the proposed amended complaint cures that deficiency, ECF 19-1, at 4. Specifically, Queen contends that leave to amend should be granted because the proposed amended complaint sufficiently alleges standing by pointing to "specific factual injuries, direct causation, and redressable harms under Maryland law." ECF 19-1, at 1. "One way amendment is futile is if the proposed amended complaint fails to allege facts sufficient to support subject matter jurisdiction." *Rouse v. Fader*, 171 F.4th 272, 283 (4th Cir. 2026). The Court thus addresses standing at the outset, because the proposed amendment would be futile if it fails to cure the standing defects of the original complaint. *See Rouse*, 171 F.4th at 285 (finding "the district court

properly rejected [plaintiffs'] motion to file an amended complaint because the plaintiffs lacked standing and "their proposed amendment is futile").

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. "[A] plaintiff may not satisfy the strictures of Article III by alleging 'a bare procedural violation, divorced from any concrete harm.'" *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 76–77 (D. Md. 2023) (quoting *Spokeo*, 578 U.S. at 341). In order to show "injury in fact," a plaintiff must establish a "concrete and particularized" and "actual or imminent" "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. "A concrete injury is one that actually exists, is real, and not abstract." *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025) (citation modified). An injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

"To satisfy standing's causation requirement, the alleged injury must be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (alterations in original) (quoting *Lujan*, 504 U.S. at 560). In other words, a plaintiff must show a "causal connection between the injury and the conduct complained of" that is not excessively attenuated. *Lujan*, 504 U.S. at 560–61.

"[T]he plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). To satisfy the requirements of standing, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). "The burden imposed by this requirement is not onerous. Plaintiffs 'need not show that a favorable decision will relieve [their] every injury.' Rather, plaintiffs 'need only show that they personally would benefit in a tangible way from the court's intervention.'" *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)).

As to injury, Queen's original complaint "essentially allege[d] a mere 'statutory violation,' which does not amount to 'concrete harm' required to establish an injury in fact." ECF 15, at 5 (quoting *Jones v. Glendale Apt. Prop. LLC*, Civ. No. DKC-24-3731, 2025 WL 2659875, at *3 (D. Md. Sept. 17, 2025)). For example, Queen did "not allege a particular instance in which [s]he refused to pay Defendant and Defendant then attempted to force the payment through the Maryland court system." *Id.* (quoting *Jones*, 2025 WL 2659875, at *4). Queen also failed to allege "enough facts on the face of the complaint" to establish causation, *id.* (quoting the same), including failing "to specify any instance where OliveTree filed a lawsuit against her," *id.* Finally, the Court found that Queen failed to establish redressability as to some of her claims. *Id.* at 6.

However, the proposed amended complaint sufficiently alleges standing. For example, with respect to Queen's RP § 8-208 claim, Queen alleges that OliveTree collected an illegally inflated late fee of $56 from her (as opposed to the $53.75 late fee owed). ECF 19-2, at 11 ¶¶ 72–73. According to Queen, this monetary loss arises as a direct result of OliveTree's actions. *Id.* at

21 ¶¶ 140–141. Thus, Queen pursues damages under § 8-208 to recoup the fees she was required to pay in alleged violation of the law. *Id.* at 21. These allegations are sufficient to plead injury in fact, causation, and redressability. "[F]inancial harm is a classic and paradigmatic form of injury in fact." *Air Evac EMS, Inc., v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018). Though her loss may be relatively small, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). Queen also sufficiently pleads that her economic injury was traceable to OliveTree's alleged conduct. *See Lowy v. Daniel Def., LLC*, 167 F.4th 175, 194 (4th Cir. 2026) (noting that the burden of showing traceability is relatively modest). Finally, a judgment in Queen's favor could redress the alleged injury, restoring to her the money she claims she is owed. As such, Queen establishes Article III standing in the proposed amended complaint, and amendment is not futile on that basis.

Queen further contends that the proposed amended complaint is not futile because it would survive a Rule 12(b)(6) motion. ECF 19-1, at 20. OliveTree argues the opposite is true—that the proposed amended complaint fails to state a claim and is futile for that reason. ECF 20, at 1. In accordance with that argument, OliveTree has included with its opposition a motion to dismiss the amended complaint. *See* ECF 20-1. "It may be within the trial court's discretion to deny leave to amend when it is clear that a claim cannot withstand a Rule 12(b)(6) motion." *Lavin v. Safeco Ins. Co. of Am.*, Civ. No. SAG-22-1788, 2022 WL 17342051, at *2 (D. Md. Nov. 30, 2022); *see also Aura Light US Inc. v. LTF Int'l LLC*, Civ. Nos. GLR-15-3198 & GLR-15-3200, 2017 WL 2506127, at *5 (D. Md. June 8, 2017) ("There is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion."). However, given that "the standard applied to assess whether a claim is futile is more forgiving than that employed in evaluating a Rule 12(b)(6) motion to dismiss," *Lavin*, 2022 WL 17342051, at *2, and

that OliveTree has already filed its arguments in favor of dismissal, the Court finds it appropriate to GRANT leave to amend and then resolve OliveTree's opposition, construed as a motion to dismiss the amended complaint.

**B. Motion to Dismiss**

1. Real Property § 8-208 (Counts II and V)

Under Counts II and V, Queen alleges that certain provisions of her lease with OliveTree violate § 8-208 of the Real Property Article of the Maryland Code. Under Count II, Queen contends that the lease violates RP § 8-208(d)(3) because it "provides for imposition of a late fee if a tenant is less than 15 days late" and "purports to limit the fee to 5% of the base rent but in practice, the Defendant charges late fees more than 5% of the base rent." ECF 19-2, at 20–21 ¶¶ 136–137. Under Count V, Queen alleges that her lease "includes provisions that waive the rights of tenants" in violation of RP § 8-208(d)(2), such as "provid[ing] the landlord the right to allocate payments made by tenants," "provid[ing] that the tenant may be liable for various legal fees and costs that have not been awarded by a court [ ] even if no action is filed," and "appoint[ing] an unlicensed entity to collect rent and other amounts under the lease." *Id.* at 25 ¶ 163.

The "legislative purpose underlying § 8-208 is to regulate leases for residential property in Maryland for the protection of tenants." *Westminster Mgmt., LLC v. Smith*, 312 A.3d 741, 765 (Md. 2024) (quoting RP § 8-208(g)(1)). "It does so by, among other things . . . rendering prohibited terms 'unenforceable by the landlord.'" *Id.* at 765–66 (quoting RP § 8-208(e)–(g)). For example, RP § 8-208 prohibits a landlord from using "a lease or form of lease containing any provision that . . . [h]as the tenant agree to waive or to forego any right or remedy provided by applicable law," or that "[p]rovides for a penalty for the late payment of rent in excess of 5% of the amount of unpaid rent due for the rental period for which the payment was delinquent." RP § 8-208(d)(2)–(3). "Any such provisions in a residential lease are unenforceable by the landlord."

*Westminster Mgmt., LLC*, 312 A.3d at 750. Section 8-208(g) "establishes a private cause of action for tenants harmed by a landlord's violation of the statute." *Smith v. Westminster Mgmt., LLC*, 290 A.3d 1161, 1176 (Md. App. 2023), *aff'd*, 312 A.3d 741 (Md. 2024). The statute provides: "[i]f the landlord includes in any lease a provision prohibited by this section . . . and tenders a lease containing such a provision or attempts to enforce or makes known to the tenant an intent to enforce any such provision, the tenant may recover any actual damages incurred as a reason thereof, including reasonable attorney's fees." RP § 8-208(g)(2). Thus, to prove a § 8-208 claim, a plaintiff "must show that the Lease contains a term proscribed by that statute and that actual damages were incurred as a reason of the inclusion of the proscribed term." *Durham v. Home Partners Holdings LLC*, Civ. No. LKG-23-03490, 2024 WL 4955279, at *14 (D. Md. Dec. 3, 2024).

*i. Count II (RP § 8-208(d)(3))*

OliveTree argues that Queen cannot sustain Count II of the amended complaint because the lease "does not include unenforceable provisions regarding late fees."[3] ECF 20-1, at 11. With respect to RP § 8-208, the Appellate Court of Maryland has explained: "the statute means what it says: landlords may not include certain provisions in their leases (subsection (d)) and, if a landlord includes any of the proscribed terms in a lease and then attempts to enforce them, tenants can sue their landlords and recover damages (subsection (g))." *Smith*, 290 A.3d at 1176. Thus, the absence of any clause in the lease that "[p]rovides for a penalty for the late payment of rent in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent" is fatal to Queen's claim under § RP 8-208(d)(3).

[3] OliveTree also contends that Queen never actually paid any late fees in excess of 5% of her rent due. ECF 20, at 8. However, fact-based arguments disproving Queen's allegations are not appropriate at the 12(b)(6) stage as the Court's obligation is only to assess the "the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Here, the late fee provision in Queen's lease requires her to pay "five percent (5%) of the base rent, as a late charge in the event that Tenant shall pay an installment of the rent[.]" ECF 19-2, at 8. Queen does not contend that the late fee provision in her lease itself contravenes subsection (d)(3). *See* ECF 19-2, at 20 ¶ 137 ("The late provision purports to limit the fee to 5% of the base rent."). Instead, she argues that in one failure to pay rent case, OliveTree claimed, and Queen paid, a late fee exceeding 5% of the rent due. *Id.* at 21 ¶ 137 ("[I]n practice, [OliveTree] charges late fees more than 5% of the base rent."); *see also* ECF 21, at 14 (arguing that the late fees themselves violate RP § 8-208(d)(3)(i)). This, Queen contends, constitutes a violation of the statute. However, the Court cannot ignore the plain language of RP § 8-208(d), which requires the inclusion of a "proscribed term[] in a lease." *Smith*, 290 A.3d at 1176; *see also Westminster Mgmt., LLC*, 312 A.3d at 758 ("In our analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it[.]"). Here, Queen has not sufficiently pled that her lease includes a prohibited provision and thus fails to plausibly allege a claim under § RP 8-208(d)(3).

Queen also contends that the lease violates RP § 8-208(d)(3) because it "provides for imposition of a late fee if a tenant is less than 15 days late." ECF 19-2, at 20 ¶ 136. OliveTree correctly points out, and Queen does not dispute, that RP § 8-208 does not bar "assessment of late fees if rent is not paid by the sixth day after it is due." ECF 20-1, at 12; ECF 21, at 18 (conceding that "§8-208(d)(3)(i) does not provide the timing of a late fee"). Queen instead contends that the Court should apply a provision from Maryland's consumer protection law, Md. Code Ann., CL § 14-1315, to determine that a late fee may not be imposed unless a payment is more than 15 days late. ECF 21, at 19. However, Queen does not bring any claim under § 14-1315, nor does she reference the statute anywhere in the amended complaint. And "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands*

*Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Accordingly, Queen has also failed to state a plausible claim under RP § 8-208(d)(3) based on a provision in her lease regarding the timing of late fees. For these reasons, Count II is dismissed.

*ii. Count V (RP § 8-208(d)(2))*

Under Count V, Queen also alleges that certain provisions in the lease required her to "agree to waive or to forego any right or remedy provided by applicable law" in violation of RP § 8-208(d)(2). First, Queen takes issue with the provision that allows OliveTree to allocate payments. ECF 19-2, at 25 ¶ 164. That section of the lease provides: "Payments from Tenant to Landlord shall be applied in the following order, rent, late charges; court costs, attorneys' and agent's fee; obligations other than Base Rent due under this lease; past due Base Rent; and current Base Rent." ECF 19-3, at 2.[4] Next, Queen contends that a lease provision holding the tenant liable for legal fees and costs violates § 8-208(d)(2). ECF 19-2, at 25 ¶ 165. That provision states that in the event of any violation of the lease, the tenant is required to pay "in addition to any other damages and expenses incurred by Landlord as a result thereof, such court costs, filing fees, agent fees, and reasonable attorneys' fees are incurred by the Landlord whether or not Landlord institutes legal proceedings." ECF 19-3, at 3. Last, Queen alleges that the "lease appoints an unlicensed entity to collect rent and other amounts under the lease." ECF 19-2, at 25 ¶ 166.

[4] The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Neither party disputes that the lease agreement, attached to both the amended complaint and the motion to dismiss, *see* ECF 19-3; ECF 20-2, is integral to Queen's claims and authentic. Accordingly, the Court considers it here.

Even assuming that these lease provisions are prohibited by RP § 8-208, Queen's claim fails because she does not allege any facts showing that any of these purportedly unlawful lease provisions were enforced against her or that she suffered any actual damages therefrom. Rather, Queen only makes a conclusory allegation that OliveTree "enforced lease provisions that waived Queen's rights." ECF 19-2, at 13 ¶ 89. Without more, the Court cannot draw a plausible inference that Queen suffered any damages based on a purported waiver of rights in violation of RP § 8-208(d)(2). Count V is dismissed.[5]

2. <u>MCDPA & MCPA (Counts I & III)</u>

Under Count I, Queen alleges that OliveTree violated § 14-202(10) of the MCDPA by "engaging in collection efforts" "when it was not licensed to act as a collection agency" as required under the Maryland Collection Agency Licensing Act ("MCALA"). ECF 19-2, at 19. Under Count III, Queen alleges that OliveTree's collection of an inflated late fee violates § 14-202(8) of the MCDCA because OliveTree "was asserting rights it knew it did not have." *Id.* at 22 ¶ 149. Queen contends that these violations of the MCDCA are also per se violations of the MCPA. *Id.* at 19 ¶ 129, at 22 ¶ 151. The Court thus considers both statutes, along with MCALA, in its analysis of these counts.

The MCPA was enacted to "set certain minimum standards for the protection of consumers across the State[.]" *Andrews & Lawrence Pro. Servs., LLC v. Mills*, 223 A.3d 947, 961 (Md. 2020) (citing CL § 13-102(b)(1)). "To that end, the CPA prohibits all trade practices that are unfair,

---

[5] The Court also notes that Queen's claims under RP § 8-208 against OliveTree would likely be subject to dismissal based on Queen's own contention that OliveTree is not her landlord. ECF 21, at 13 (arguing that the lease is not between Queen and OliveTree). RP § 8-208 is meant to "regulate leases for residential property in Maryland for the protection of tenants . . . by, among other things . . . rendering prohibited terms 'unenforceable *by the landlord*.'" *Westminster Mgmt.*, 312 A.3d at 765–66 (citation omitted); *see also* RP § 8-208(g) ("If *the landlord* includes in any lease a provision prohibited by this section or made unenforceable by § 8–105 of this title or § 8–203 of this subtitle, . . . the tenant may recover any actual damages . . . ." (emphasis added)).

abusive or deceptive in, among other things, the collection of consumer debts." *Id.* (citing CL §§ 13-301(14)(iii), 13-303(5)). "The MCDCA regulates any 'person collecting or attempting to collect an alleged debt arising out of a consumer transaction.'" *Id.* at 961–62 (quoting Md. Code Ann., Bus. Reg. ("BR") § 14-201(b)). As relevant here, the MCDCA prohibits a debt collector from "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist," CL § 14-202(8), or "engag[ing] in unlicensed debt collection activity" that violates MCALA, *id.* § 14-202(10). MCALA "requires a collection agency to be licensed by the State Collection Agency Licensing Board unless exempted by the Act." *Mills*, 223 A.3d at 962 (citing BR §§ 7-101, 7-301). "Because the MCALA does not provide its own mechanisms for public enforcement or a private cause of action, a consumer who is sued by an unlicensed debt collector in violation of the MCALA may bring a claim for damages pursuant to the MCDCA and the MCPA." *Williams v. Ewrit Filings, LLC*, 268 A.3d 960, 964 (Md. App. 2022). "[A] violation of MCDCA, as well as the MCALA are per se violations of the [M]CPA." *Mills*, 223 A.3d at 961.

*i. Count I (CL § 14-202(10))*

Under Count I, Queen alleges a derivative claim under the MCDCA and MCPA based on OliveTree's failure to obtain licensure as a collection agency under MCALA. As such, Queen must first sufficiently allege that OliveTree "meets the definition of 'collection agency' under the MCALA." *Hall v. Heather Hill Prop. Co., LLC*, Civ. No. ABA-25-0238, 2026 WL 279112, at *7 (D. Md. Feb. 3, 2026). Under MCALA, a collection agency is defined in relevant part as "a person who engages directly or indirectly in the business of . . . collecting for, or soliciting from another, a consumer claim." BR § 7-101(c)(1)(i). A "consumer claim" is one that is for money owed arising "from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services." *Id.* § 7-101(e).

According to Queen, OliveTree is a "property management company for apartment complexes in Maryland that rent[s] residential apartments." ECF 19-2, at 2 ¶ 5. Queen contends that OliveTree is not her landlord, but a "managing agent," *id.* ¶ 7, that "is hired to collect amounts Landlords claim is owed for rent, utilities, late fees and other services," *id.* at 4 ¶ 22. Queen also alleges that OliveTree brought failure to pay rent actions against Queen to collect rent owed on behalf of the apartment complex. *Id.* at 13 ¶ 85. Drawing all reasonable inferences in favor of Queen, these allegations support a plausible inference that OliveTree was acting as a collection agency.[6] *See Williams*, 268 A.3d at 967 (explaining that "the MCALA implicitly asserts that" all individuals or entities other than licensed real estate brokers or individuals acting on behalf of the real estate broker, "that seek to collect rent for others *are* in fact performing debt collection activity"); *see also Hall*, 2026 WL 279112, at *7 (finding a plaintiff failed to allege that a property management company was a collection agency under MCALA where she alleged that the company was "the party that holds the claim to rent" as they were "delegated operational control" as "master lessee").

However, Queen fails to state an MCDCA or MCPA claim because she fails to allege that she incurred any actual damages stemming from OliveTree's lack of licensure. Queen contends

[6] OliveTree filed a supplement urging the Court to consider an "Opinion and Order of the Honorable Rachel McGuckian, of the Circuit Court of Montgomery County," finding that Maryland legislative history and case law do not "support a holding that a property management company was intended to be in the class of entities required to be licensed as a debt collector." ECF 23, at 1. OliveTree asserted that this opinion and order was attached to the supplement as an exhibit, but there is no attachment thereto. *See id.* Queen has also filed a supplement with a "decision by Judge Jeannie E. Cho of the Montgomery County Circuit Court in *Twyman v. Orlo Management*, Case No. C-15-CV-25-001299 (July 31, 2026) that denied a Defendant's Motion to Dismiss that asserted that a property manager was not covered by" MCALA. ECF 25, at 1. Queen attaches the decision to her supplement. *See* ECF 25-1. Despite both parties' urging, the Court need not reach the issue of whether the Maryland legislature intended to include property management companies in the definition of a debt collector under MCALA, as it examines only whether Queen *sufficiently alleges* that OliveTree was a debt collector under the statute.

that any "amounts collected by an unlicensed collection agency are recoverable damages." ECF 21, at 10. This assertion is not entirely accurate. "MCDCA § 14-203 only allows recovery of damages proximately caused by its violation, 'including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.'" *Allen v. Silverman Theologou, LLP*, No. Civ. No. JFM-14-3257, 2015 WL 2129698, at *7 (D. Md. May 6, 2015) (quoting CL § 14-203); *see also Hall*, 2026 WL 279112, at *7 ("[W]ith all MCDCA violations . . . a plaintiff must allege that the unlicensed collection activity caused 'actual damages.'"); *see Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, 281 A.3d 72, 84 (Md. 2022) ("Like the MCPA, actual damages are an element of any MCDCA claim.").

Here, Queen cannot allege that OliveTree's collection of her rent itself constitutes actual loss or injury because her rent was owed regardless of OliveTree's licensure status. ECF 19-2, at 2 ¶ 7 ("OliveTree is empowered . . . to collect and receive [rent] payments."), at 11 ¶ 71 ("The rent for [Queen's] apartment was $1,075."). As such, Queen cannot bring her MCDPA and MCPA claims based on OliveTree collecting her rent. *Willis v. Countrywide Home Loans Servicing, L.P.*, Civ. No. CCB-09-1455, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009) (finding a plaintiff failed to allege injury or loss under the MCPA because he did not allege that he "suffer[ed] any specific harm, apart from the debt that he already owed."). Moreover, Queen does not allege that the slightly inflated late fee of $56 that she paid in May of 2024 was a result of OliveTree's lack of licensure. Instead, Queen expressly attributes this to an improper calculation of her rent under the lease. ECF 19-2, at 11 ¶ 71 ("The rent for her apartment was $1,075. Upon information and belief, the rent asserted by OliveTree wrongfully included a $40 pet fee and a $45 utility charge because the lease treats these amounts as 'additional rent.'"); *id.* ¶ 72 ("The late fee based on the rent of $1,075 was $53.75 not the $56 set forth in the FTPR complaint."). She does not allege that, for

example, OliveTree improperly imposed unlawful debt collection service fees while unlicensed, or that Queen suffered emotional damages as a result of OliveTree's lack of licensure and subsequent collections. *Cf. Allen*, 2015 WL 2129698, at *7 ("Under the MCDCA, therefore, an example of compensable proximate damages are [collection] fees improperly added to a plaintiff's debt by the collection agency."). Accordingly, Queen has failed to allege any actual damages resulting from OliveTree's purported lack of licensure as a collection agency. Count I thus fails.

*ii. Count III (CL § 14-202(8))*

Queen also alleges that OliveTree violated § 14-202(8) of the MCDCA because it collected an inflated late fee that it knew it was not entitled to. ECF 19-2, at 22 ¶¶ 144, 148. OliveTree counters that Queen fails to plausibly allege Count III because her lease does not include unenforceable late fee provisions.[7] ECF 20-1, at 11–12.

To state a claim under § 14-202(8) of the MCDCA, Queen must establish that OliveTree 1) did not possess the right to collect the amount of debt sought and 2) that it attempted to collect the debt knowing that it lacked the right to do so. *Price v. Murdy*, Civ. No. GLR-17-736, 2018 WL 1583551, at *12 (D. Md. Mar. 30, 2018) (*Lewis v. McCabe, Weisberg & Conway, LLC*, Civ. No. DKC-13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014)). "Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its validity.'" *Id.* (emphasis omitted) (quoting *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013)). "Plaintiffs may show that a debt is invalid by demonstrating that a debt collector inflated the amount due through 'inclusion of an unauthorized type of charge.'" *Flournoy v. Rushmore Loan*

[7] OliveTree also argues that it has not collected any inflated late fee from Queen. ECF 20-1, at 12. For the reasons previously stated, the Court declines to consider this fact-based argument. *See supra* n. 3.

*Mgmt. Servs., LLC*, Civ. No. PX-19-0407, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020) (quoting *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 381 (4th Cir. 2016)).

According to Queen, her rent was $1,075 per month, and a late fee should have been $53.75. ECF 19-2, at 11 ¶¶ 70–71. Despite this, Queen alleges that OliveTree incorrectly "claimed that [Queen] owed rent of $1120" by "wrongfully includ[ing] a $40 pet fee and $45 utility charge" in her rent. *Id.* ¶ 71. In turn, Queen alleges that OliveTree calculated and charged her with an improperly inflated late fee. *Id.* ¶¶ 72–73. Based on this, Queen alleges she suffered actual damages by paying $56, rather than $53.75, as a late fee. *Id.* ¶ 73. These allegations, taken as true and most favorably to Queen, sufficiently state a claim that OliveTree violated § 14-202(8) of the MCDCA, as Queen alleges that OliveTree did not have the right to collect the $56 late fee, and did so anyway knowing the rent calculation was incorrect.[8] *Cf. Flournoy*, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020) (finding a plaintiff stated a plausible § 14-202(8) claim based on a theory that defendants charged inflated attorneys' fees).

**C. Money Had and Received/Unjust Enrichment (Count IV)**

"Generally, a claim for money had and received lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." *Roberts v. Equian, LLC*, 793 F. Supp. 3d 643, 662 (D. Md. 2025) (internal quotation marks omitted) (quoting *Bourgeois v. Live Nation Ent., Inc.*, 59 A.3d 509, 528 (Md. 2013)). "The exact contours of the 'money had and received' cause of action under Maryland are not entirely clear." *Id.* (citing the same). But generally, "[a]ctions for money had and received are limited to cases where money was paid (1) under mistake of fact or law, (2) by fraud or false pretenses[,] (3) upon an unexecuted illegal contract, or (4) in 'certain circumstances,' under an executed illegal

[8] OliveTree's argument regarding whether the lease contains an unenforceable late fee provision is more relevant to Queen's RP § 8-208 claims. *See supra* Section III.B.1.

contract." *Doe v. Gormley*, Civ. No. ADC-15-2183, 2016 WL 4400301, at *8 (D. Md. Aug. 17, 2016) (quoting *Bourgeois*, 59 A.3d at 529). Here, Queen alleges that she paid OliveTree a wrongfully inflated late fee that she was not obligated to pay. As such, Queen sufficiently pleads a claim for money had and received under Maryland law. *Cf. Roberts*, 793 F. Supp. 3d at 662 (finding a money had and received claim sufficiently alleged where "Plaintiffs have alleged that Equian was acting as an unlicensed debt collector, and that it demanded and collected sums that Plaintiffs were not under a legal obligation to pay").

However, Queen cannot sustain an unjust enrichment claim. An unjust enrichment claim is an equitable remedy "that permit[s] recovery, where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *Swedish Civil Aviation v. Project Mgmt. Enter.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002). It is well established "that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000). Here, Queen argues that her lease does not qualify as an express contract under these circumstances because it is not between her and OliveTree. ECF 21, at 13. However, she alleges in the amended complaint that "OliveTree is empowered under the terms of leases . . . to collect and receive payments for amounts from tenants." ECF 19-2, at 2. Thus, there is an express contract governing the parties' relationship and "concerning the same subject matter on which the quasi-contractual claim rests[.]" *Dashiell*, 727 A.2d at 607 (citation omitted). Queen's unjust enrichment claim is dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Queen's motion for leave to file an amended complaint is granted. OliveTree's opposition, construed as a motion to dismiss, is granted in part and denied

in part. Count III survives, as well as Count IV insofar as it asserts a claim for money had and received. All other counts are dismissed.

A separate implementing order will issue.

Dated: August 13, 2026

/s/
Brendan A. Hurson
United States District Judge